# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LIONEL C. WHITEHEAD**,

        Petitioner,

v.                                                  **Case No. 06-C-956**

**WARDEN JEFFREY P. ENDICOTT,**

        Respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Lionel C. Whitehead ("Whitehead") is a prisoner incarcerated pursuant to a Wisconsin state court judgment. On September 12, 2006, proceeding pro se, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Chief Judge Rudolph T. Randa screened Whitehead's petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases and on March 7, 2007, the respondent answered Whitehead's petition. On February 22, 2007, this case was reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge. On March 15, 2007, Whitehead filed a motion requesting that counsel be appointed to assist him. On July 16, 2007, this court denied Whitehead's motion on the basis that, upon a review of the record in this matter, the court was unable to say that the Whitehead has demonstrated a reasonable probability of success if counsel were appointed for Whitehead. On October 29, 2007, this court denied Whitehead's renewed motion for appointment of counsel but did permit Whitehead to submit a supplement to his memorandum in support of his petition no later than November 29, 2007. Whitehead did so, and the respondent filed his supplemental response memorandum on December 19, 2007. The pleadings on Whitehead's petition are now closed, and the matter is ready for resolution.

**FACTS**

The following relevant facts are contained in the court of appeals decision affirming Whitehead's conviction on direct appeal:

> Early in the morning of December 3, 2001, Patricia and Timothy Brown awoke to find a man standing at the foot of their bed. The Browns' bedroom was illuminated by the light from a television at the intruder's back. The man approached the Browns, holding a knife to Timothy's chest and threatening Patricia, and demanded to know where they kept their money. Timothy was able to knock the knife out of the man's hand and he chased the intruder from the bedroom.
>
> Patricia called 911 as Timothy and the intruder ran through the house. The intruder exited through a screen door and held it shut while Timothy tried to follow him. When Timothy was able to open the door, the intruder told him to stay back and threatened him. Timothy responded the police were coming and the man fled. Floodlights on the Browns' house and garage as well as a light on a neighbor's garage illuminated the Browns' yard. The entire encounter with the intruder took place in less than two minutes.
>
> Patricia described the man to the 911 operator as a black male wearing dark clothes. When Green Bay police officer David Graf arrived, the Browns described the intruder as a black male, no taller than 5'10", approximately 170 pounds, wearing a dark jacket and knit cap. Graf radioed this description to other officers and, within a few minutes, officer Kevin Dymond radioed that a suspect matching this description had been apprehended running through a nearby intersection.
>
> Dymond then arrived at the Browns' home with a suspect the police later identified as Whitehead. As Patricia and Timothy both approached the patrol car, Timothy looked inside and yelled, "That's the mother fucker, that bastard." Patricia subsequently identified Whitehead as the intruder.

State v. Whitehead, 2003 WI App 111, ¶¶2-5 (unpublished).

On March 21, 2002, following a jury trial in Brown County Circuit Court, Whitehead was convicted of one count of burglary while armed with a dangerous weapon, in violation of Wisconsin Statute §943.10(2)(b), and one count of armed robbery, in violation of Wisconsin Statute §943.32(2). (Ans. Ex. A.) On May 21, 2002, he was sentenced to 25 years of initial confinement and 15 yeas of extended supervision as to each count, to be served concurrently. (Ans. Ex. A.) Whitehead appealed and on April 15, 2003, in an unpublished decision, the court of appeals

affirmed his conviction. (Ans. Ex. E.) On June 12, 2003, the Wisconsin Supreme Court denied review. (Ans. Ex. F.) Whitehead then pursued post-conviction relied in the trial court, which was denied and affirmed by the court of appeals on January 11, 2005. (Ans. Ex. J). The Wisconsin Supreme Court denied review on April 6, 2005. (Ans. Ex. K.) Whitehead also filed a petition for a writ of habeas corpus in the court of appeals, which was denied on January 13, 2006, and on May 9, 2006, the Wisconsin Supreme Court denied review. (Ans. Exs. M, N.)

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and

applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

**ANALYSIS**

Whitehead alleges the following grounds for relief: (1) due process violation for impermissibly suggestive "show-up" identification; (2) insufficient evidence to support a conviction for armed robbery; (3) insufficient evidence to support a conviction for armed burglary; (4) ineffective assistance of trial counsel; (5) prosecutorial misconduct when the prosecutor vouched for the credibility of his witnesses during closing argument; and (6) ineffective assistance of appellate counsel. The court shall address each of these in turn.

**Identification**

On direct appeal, Whitehead challenged the identification by only Patricia Brown. (Ans. Ex. B.) Whitehead subsequently raised the issue of Timothy Brown's identification by way of a petition for a writ of habeas corpus in the court of appeals on the basis that his appellate counsel was ineffective for failing to raise the issue on appeal. (Ans. Ex. M.) Thus, this court shall address only the identification by Patricia Brown here; the court shall address the identification by Timothy Brown below.

Whitehead argued that Patricia Brown's identification was inadmissible because she had identified Whitehead in a show-up identification after having heard her husband identify Whitehead as the intruder. The court of appeals relied upon the case of State v. Marshall, 92 Wis. 2d 101, 284 N.W.2d 592 (1979), Whitehead, 2003 WI App 111, ¶¶7-12, a case in which the Wisconsin Supreme Court set forth the relevant United States Supreme Court precedents regarding identification procedures. Marshall, 92 Wis. 2d at 116, 284 N.W.2d at 599 (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188, 198 (1972); Stovall v. Denno, 388 U.S. 293, 302 (1967)).

The court of appeals did not decide whether the identification was impermissibly suggestive because it concluded that the identification was nonetheless reliable. The court of appeals stated:

> Several circumstances surrounding the identification lead us to conclude the identification was reliable. Patricia testified she saw the intruder's face during the attack, partly because the intruder grabbed her and drew her toward him. She also said at one point her head was touching his body. Further, it is undisputed the identification took place less than thirty minutes from the attack. In addition, at Whitehead's preliminary hearing, Patricia testified she could not remember whether she or Timothy identified Whitehead first. Finally, at trial, Patricia testified she had ample opportunity to observe the intruder's facial features in the house and said she had no doubt that he was Whitehead. At both the preliminary hearing and the trial, Patricia identified Whitehead, and at trial said she had no doubt he was the intruder. The record establishes Patricia was able to observe the intruder and subsequently identified him as Whitehead a short time after initially seeing him. In addition, her testimony suggests that Timothy's statement did not influence her identification.

> While it is true that the minimal amount of light, time and Patricia's lack of glasses make the chance of misidentification more likely, we cannot conclude they make the identification unreliable. Instead, these are factors properly left to the jury to resolve when considering Patricia's identification testimony. Further, we are satisfied that Patricia's failure to remember who identified Whitehead first and her subsequent in-court identifications show Timothy's statement did not influence her identification of Whitehead.

Whitehead, 2003 WI App 111, ¶¶11-12 (internal citation omitted).

The Supreme Court has held that "reliability is the linchpin in determining the admissibility of identification testimony." Brathwaite, 432 U.S. at 114. In determining whether an identification is reliable, a court must consider the totality of circumstances and should address certain factors including, the opportunity to view, the degree of attention, the accuracy of the description, the witness' level of certainty, and the time between the crime and the identification. Id. at 114-15.

As is reflected in the portion of the court of appeals' decision quoted above, the court of appeals appropriately considered the Brathwaite factors and reasonably concluded that the identification, whether or not the procedure was impermissibly suggestive, was reliable. Thus, this court is unable to say that the court of appeals decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, this court must deny Whitehead's petition as to this ground.

**Sufficiency of the Evidence**

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 US 358, 364 (1970)). "A federal court has a duty to assess the historic

-6-
Case 2:06-cv-00956-AEG   Filed 02/13/08   Page 6 of 20   Document 24

facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court." Id. at 318.

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 318-19 (internal citations, quotation marks, and footnote omitted).

With respect to his armed robbery conviction, Whitehead argues that the evidence was insufficient because there was no evidence that he ever obtained property by threatening Patricia Brown, but rather only that he threatened Timothy Brown. (Pet. at 7, 16-17.) The court of appeals rejected this argument by noting that "stealing property from one person while threatening 'the owner or another who is present' constitutes robbery" under Wisconsin law. (Ans. Ex. J at 3-4.) Second, the court of appeals noted that under Wisconsin law it was sufficient that Whitehead demanded money from Patricia while standing near her and brandishing a knife; the state was not required to show that Whitehead pointed the knife at Patricia. (Ans. Ex. J at 4.)

With respect to his armed burglary conviction, Whitehead argues that all the property taken in the course of the burglary had already been removed from the residence before Whitehead returned to the residence, armed himself with a knife from the residence, and confronted the Browns. (Pet. at 8, 17.) Thus, Whitehead argues that the crime of burglary was completed before he armed himself. (Pet. at 17.) The court of appeals rejected Whitehead's argument, noting that regardless of how many unarmed entries Whitehead may have made to the residence, his final entry during which he armed himself and confronted the Browns was also a burglary, and thus there was ample evidence to support his conviction for the crime of armed burglary. (Ans. Ex. J at 4.)

Having reviewed the trial transcript, the court finds that there was ample evidence to support Whitehead's convictions. Whitehead is simply mistaken when he argues that the state was required to produce evidence that he overtly threatened Patricia Brown with the knife before he obtained two dollars from her. Simply brandishing the knife and thus causing her to reasonably fear that he would use it if she refused to comply with his demand for property, or threatening her husband with the knife, are facts that are both sufficient to sustain a conviction for armed robbery under Wisconsin law. See Wis. Stat. § 943.32(1)(b)..

Similarly, the court of appeals correctly observed that there was sufficient evidence to sustain Whitehead's conviction for the crime of armed burglary. Under Wisconsin law, a person commits the crime of armed burglary whenever he enters a building or dwelling with the intent to steal, and while inside the building or dwelling, arms himself with a dangerous weapon. Wis. Stat. § 943.10. Regardless of whether Whitehead may have made repeated unarmed entries into the residence before returning and arming himself is inconsequential. The facts adduced at trial indicate that his final entry satisfied the elements of armed burglary; his prior unarmed entries likely could have sustained additional convictions for charges of unarmed burglary, but the state elected not to pursue these additional charges against Whitehead.

Finding no error in the court of appeals' conclusion, this court is unable to say that its decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, this court must deny Whitehead's petition as to this ground.

**Ineffective Assistance of Trial Counsel**

Whitehead presents numerous reasons as to why his trial counsel was allegedly ineffective: (1) his trial counsel called Whitehead's wife, whom he knew or should have known would have

-8-
Case 2:06-cv-00956-AEG   Filed 02/13/08   Page 8 of 20   Document 24

contradicted Whitehead's alibi defense; (2) failed to show that the Whitehead's clothes did not match the description of those described by the victims; (3) failed to interview or call witnesses who would have corroborated Whitehead's alibi; and (4) failed to point out inconsistent statements.

The court of appeals held that Whitehead was not denied the effective assistance of trial counsel when his counsel called Whitehead's wife to testify because her testimony did not undermine Whitehead's alleged alibi defense. The court stated that Whitehead did not have an alibi defense to present because the bartender was unable to account for Whitehead's whereabouts at the time of the burglary. (Ans. Ex. J at 5.) As for Whitehead's claim regarding his clothing, the court of appeals held that his argument was simply false—Whitehead's clothing was admitted into evidence and sent to the jury room. (Ans. Ex. J at 5-6.) The court further held that Whitehead's argument that his counsel was ineffective for failing to specifically point out the discrepancies in his clothing versus that described by the witnesses was waived because he raised this issue only in reply. (Ans. Ex. J at 6.) Finally, regarding counsel's alleged failure to impeach the Browns, the court held that the fact that the Browns testified they did not lock their doors, but yet testified that they had been robbed in the past few month, was not a ground for impeachment, and thus trial counsel's conduct was not unreasonable or prejudicial. (Ans. Ex. J at 6-7.) The court of appeals did not directly address Whitehead's allegation that his trial counsel was ineffective for failing to interview or call witnesses who would have corroborated his alibi because other than mentioning a second bartender, Whitehead failed to identify these alleged "other witnesses." In any event, this court will proceed on the basis that Whitehead sufficiently raised the issue in his pleadings to the court of appeals and Wisconsin Supreme Court to preserve the issue for review by this court.

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1)

standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant under the second prong, the court need not consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

As the court of appeals noted, the testimony of Keva Whitehead, Whitehead's wife, did not undermine Whitehead's alibi defense because he had no alibi. The bartender, who Whitehead alleged was his alibi, testified that he could not remember when Whitehead left the bar, but believed it was "somewhere around midnight." (Ans. Ex. Q at 91.) A police officer testified that on the date of the incident, shortly after he arrested Whitehead, he drove Whitehead back to the bar at 1:08 AM and at that time the bartender stated that Whitehead had left the bar roughly 30 to 60 minutes earlier. (Ans. Ex. Q at 246.) Thus, under either scenario, the bartender could not account for Whitehead's whereabouts at the time of the crime, which occurred at a home just one house away from the bar and was reported to the police at 12:46 AM while Whitehead was still fighting with Timothy Brown.

Keva Whitehead testified that she and her husband were shopping at numerous stores at the time around the incident and submitted a bank statement to corroborate this testimony. (Ans. Ex. R at 302-07.) However, the prosecutor pointed out on cross-examination that the bank statement actually stated that the transaction occurred on November 30, and had simply posted to the account on December 2, the date Keva Whitehead alleged she was shopping with her husband. (Ans. Ex. R at 315.) Additionally, although Keva Whitehead did not provide a detailed timeline of her alleged activities that evening, adding up the vague times that she included in her testimony, it appears that she alleged that at roughly 12:20 AM, Whitehead left on foot from a store that was very close to their home. (Ans. Ex. R at 305-06.) When she returned home, she found a note from Whitehead indicating the he went out to get cigarettes. (Ans. Ex. R at 307.) She also testified that it was not uncommon for Whitehead to walk at night or to walk the ten or eleven blocks from their home to the bar. (Ans. Ex. R at 307-10.)

Having reviewed the trial transcript, the court finds nothing unreasonable about calling Keva Whitehead as a defense witness and nothing about her testimony was necessarily prejudicial. The prosecutor effectively pointed out that Keva Whitehead was likely mistaken about her dates in light of the fact that the bank statement showed the transaction did not occur on the date she alleged. However, even if the jury were to believe Keva's account, it would not necessarily have contradicted the bartender's testimony or the statement that Whitehead gave to the police officers shortly after being arrested. In light of Keva's imprecision with the timeline of events she recounted, it was entirely reasonable that the jury could have assumed that Whitehead went shopping with his wife, and then went to the bar, left within the timeframe the bartended testified to, and thus had plenty of time to commit the crimes. Therefore, the court concludes that Whitehead's counsel's performance was not unreasonable nor prejudicial and therefore Whitehead is not entitled to relief on this ground.

As for Whitehead's claim that Whitehead's counsel was ineffective because he failed to show that the Whitehead's clothes did not match the description of those described by the victims, the court finds no merit in this argument. As the court of appeals noted, Whitehead's attorney *did* obtain the clothes he was wearing on the night of his arrest and *did* introduce these clothes into evidence. (Ans. Ex. J at 5-6.) Whitehead's attorney even had Whitehead's wife hold up the jacket to the jury and identify it. (Ans. Ex. Q at 310-11.) To the extent that Whitehead alleges that his attorney was ineffective for not emphasizing this point, the court finds that his attorney's performance was not unreasonable or prejudicial. Whitehead's attorney reasonably presented the issue to the jury; emphasizing the point would have likely contradicted the core of Whitehead's defense i.e. eyewitnesses may mis-recollect details. Arguing that the jury should conclude that the victims accurately recalled the perpetrator's clothing would have undermined the defense argument that the victims could not have been able to accurately recall the perpetrator's face. The jury would have reasonably dismissed this argument on the basis that a victim is more likely to remember a perpetrator's face than the details of his clothing. Therefore, the court finds that Whitehead is not entitled to relief on this ground.

As for Whitehead's argument that his trial counsel was ineffective for failing to interview or call witnesses who would have corroborated Whitehead's alibi, the court of appeals refused to consider this argument because Whitehead raised it for the first time in his reply brief. (Ans. Ex. J at 6.) As stated above, Whitehead never identified any specific persons, but only made a conclusory statement that his attorney had failed to interview and call other witnesses who would have corroborated his alibi.

The court of appeals' rejection of these claims on the basis that Whitehead failed to raise them in his post-conviction motion and his initial appellate brief constitutes adequate and independent state grounds and therefore precludes review by this court. See Coleman v. Thompson,

Case 2:06-cv-00956-AEG   Filed 02/13/08   Page 12 of 20   Document 24

501 U.S. 722, 734-35 (1991). Whitehead fails to demonstrate cause and prejudice for his failure to properly raise this issue and therefore this court is not permitted to review the issue.

Finally, Whitehead alleged that he was denied the effective assistance of counsel because his attorney failed to point out prior inconsistent statements by the Browns. Specifically, Whitehead alleges that his attorney should have emphasized discrepancies in the descriptions that the victims gave. This argument is related to Whitehead's argument that his attorney was ineffective for failing to emphasize the discrepancies in the witnesses' descriptions of the intruder's clothing and the clothing that Whitehead was arrested wearing.

Having reviewed the trial transcript, the court is unable to say that Whitehead's attorney behaved unreasonably with respect to the alleged inconsistencies in the witnesses' statements. The relevant discrepancies were adequately and reasonably presented to the jury. Therefore, the court must conclude that Whitehead was not denied the effective assistance of trial counsel and thus must deny his petition as to these grounds.

**Prosecutorial Misconduct**

Whitehead argues that the prosecutor improperly vouched for his witness when he said in closing arguments:

> [W]e have people who take the witness stand and honor and respect the oath that they take to tell the truth and tell the truth, and there are witnesses who have absolutely no regard whatsoever for what the truth is, and I believe that the Browns fall in that first category, and unfortunately Mrs. Whitehead falls in that second category.

(Ans. Ex. R at 346.) The prosecutor then proceeded to detail the various alleged untruths in Keva Whitehead's testimony.

> The leading Supreme Court decision on the question whether prosecutorial misconduct is so egregious that a new trial is required, as a matter of constitutional law, is <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986). In <u>Darden</u>, the Court set forth six factors that should be considered in deciding this question: (1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights

of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut. 477 U.S. at 181-82.

Howard v. Gramley, 225 F.3d 784, 793 (7th Cir. 2000)

Even if a defendant is able to demonstrate that multiple of the Darden factors cut in his favor, a finding of prosecutorial misconduct does not automatically follow. Id. Rather, the most important factor is the weight of the evidence against the defendant. Id.

This court does not find that the prosecutor's comments crossed the line to be inappropriate and therefore it is unnecessary for the court to consider the Darden factors. Although the prosecutor did speak in the first person, the effect of his statement was not to vouch for the credibility of the Browns. This was an insignificant passing comment where the prosecutor was effectively saying that the evidence supports the conclusion that the Browns were truthful and Keva Whitehead was not. Although the prosecutor explicitly stated, "I believe," the fact that a prosecutor is largely speaking of his own personal beliefs regarding the evidence is implicit throughout most any closing argument. Thus, this court finds that the decision of the court of appeals was not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, this court must deny Whitehead's petition as to this ground.

**Ineffective Assistance of Appellate Counsel**

Whitehead alleges he was denied the effective assistance of appellate counsel when his appellate counsel (1) failed to allege that Whitehead's right to confrontation was violated and a judge abused his discretion during a suppression hearing; (2) failed to challenge the identification by Timothy Brown; (3) failed to challenge the trial court's ruling not to grant a mistrial; (4) failed to

-14-
Case 2:06-cv-00956-AEG   Filed 02/13/08   Page 14 of 20   Document 24

challenge the admission of other-acts evidence; and (5) failed to address prosecutorial misconduct. The court shall address each of these grounds in turn.

Whitehead argues that his right to confrontation was violated when the trial court denied his motion to suppress identification based upon only the testimony of the government witnesses and refused to allow Whitehead to call the Browns. The court of appeals denied Whitehead relief as to this ground because he had failed to demonstrate how anything the Browns would have said would have benefited him. (Ans. Ex. M at 3.)

The trial court denied Whitehead the opportunity to call the Browns because the court found such testimony to be unnecessary because, even accepting the defense's arguments as true, the court nonetheless concluded that the identification procedure was not unduly suggestive. (Ans. Ex. P at 55-67.) Thus, the Browns' testimony was unnecessary because it would be relevant to the question of whether the identification was nonetheless reliable. (Ans. Ex. P at 55-67.) In light of the reasons stated by the trial court, it was not unreasonable for Whitehead's appellate counsel to decline to raise the issue on appeal, and further Whitehead has failed to demonstrate that he was prejudiced by his appellate counsel's inaction.

Whitehead next argues that his appellate counsel was ineffective for failing to raise the issue of Timothy Brown's identification. Specifically, Whitehead argues that his appellate attorney should have pointed out the various ways that Timothy Brown's description differed from the clothes Whitehead was wearing when arrested. Additionally, Whitehead argues that he is entitled to relief based upon the precedent of State v. Dubose, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582.

The court of appeals rejected Whitehead's first argument on the ground that any discrepancy simply went to the weight that the jury would give Timothy Brown's identification and rejected

-15-
Case 2:06-cv-00956-AEG   Filed 02/13/08   Page 15 of 20   Document 24

Whitehead's argument regarding Dubose on the ground that this case was decided after his appeal and thus his appellate counsel could not have been ineffective for failing to raise the issue.

The court finds that Whitehead's appellate counsel's decision to not raise the issue of Timothy Brown's identification on appeal was not unreasonable or prejudicial to Whitehead and therefore Whitehead was not denied the effective assistance of appellate counsel. As the court of appeals noted, any discrepancies in Timothy Brown's description simply went to the question of weight. Additionally, relying upon the standard that the Supreme Court established regarding the admissibility of eyewitness identification testimony, as the court set forth above in discussing Patricia Brown's identification, Whitehead is unable to demonstrate that he was prejudiced by his appellate counsel's failure to raise the issue. Because the court of appeals held that Patricia Brown's identification was admissible under the Brathwaite factors, certainly Timothy Brown's identification would have been found admissible in light of the fact that he had more of an opportunity to view Whitehead, had more of a reason to pay more attention to Whitehead, provided at least as accurate of a description of Whitehead, was more certain in his identification, and less time had elapsed between the crime and his identification of Whitehead. See Brathwaite, 432 U.S. at 114-15.

As for Whitehead's arguments regarding Dubose, Whitehead has spent significant time arguing that the Dubose precedent should apply to his case. In Dubose, relying upon recent scientific and criminal justice research regarding the fallibility of eyewitness identification, a bare majority of the Wisconsin Supreme Court substantially altered eyewitness identification law in Wisconsin by holding that

> evidence obtained from an out-of-court showup is inherently suggestive and will not be admissible unless, based on the totality of the circumstances, the procedure was necessary. A showup will not be necessary, however, unless the police lacked probable cause to make an arrest or, as a result of other exigent circumstances, could not have conducted a lineup or photo array. A lineup or photo array is generally

-16-
Case 2:06-cv-00956-AEG   Filed 02/13/08   Page 16 of 20   Document 24

> fairer than a showup, because it distributes the probability of identification among the number of persons arrayed, thus reducing the risk of a misidentification.

Dubose, 2005 WI 126, ¶33, 285 Wis. 2d 143, 699 N.W.2d 582.

Thus, under this precedent, the Browns' identifications would have likely been excluded, particularly in light of the trial court's separate decision that probable cause existed to arrest Whitehead when he was initially stopped by the police, (see Ans. Ex. P at 67). However, Dubose was decided on July 14, 2005, long after Whitehead's conviction was final. In Wisconsin, new constitutional rules of criminal procedure apply retroactively only to cases pending on direct review or not yet final. See State v. Koch, 175 Wis. 2d 684, 694, 499 N.W.2d 152, 158 (1993). Whitehead's conviction was final long before Dubose was decided. Further, the court finds no merit in Whitehead's argument that his counsel was ineffective for failing to raise the Dubose issue on appeal. It cannot be considered unreasonable for an attorney to fail to raise a legal argument that does not exist at the time, and thus the state court's decision was not an unreasonable application of the Strickland precedent.

Additionally and alternatively, the Dubose precedent, regardless of when it was decided or whether it is retroactively applicable, does not entitle Whitehead to relief in this court. The Wisconsin Supreme Court was very clear that its decision was grounded in the Wisconsin Constitution. Dubose, 2005 WI 126, ¶¶39-44, 285 Wis. 2d 143, 699 N.W.2d 582. This court may grant a petition for a writ of habeas corpus based upon only a decision of the United States Supreme Court interpreting or applying federal law. See 28 U.S.C. §2254(d)(1). Since the Wisconsin Supreme Court's interpretation of its constitution does not run afoul of United States constitutional protections, Whitehead may find relief based upon new interpretations of state law only in state courts.

-17-
Case 2:06-cv-00956-AEG   Filed 02/13/08   Page 17 of 20   Document 24

Therefore, this court is unable to say that the decision of the court of appeals was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Thus, this court must deny Whitehead's petition as to this ground.

Whitehead argues that his appellate counsel was ineffective for failing to challenge the trial court's denial of a motion for a mistrial because during voir dire a member of the jury panel identified Whitehead as an inmate in the housing unit where the prospective juror worked as a guard, thus indicating to the rest of the jury that Whitehead was in custody. The court of appeals held that this comment was unlikely to have resulted in prejudice to Whitehead and thus it was not unreasonable or prejudicial for his appellate counsel to not raise the issue. (Ans. Ex. M at 4.)

This court agrees with the court of appeals. A jury hearing a case involving a violent crime is likely to assume that the defendant is in custody regardless of the fact that he may appear in court in street clothes, and thus it was not unreasonable for his appellate counsel not to raise this issue. Further, Whitehead fails to present evidence to indicate that he was prejudiced by this reference so as to not receive a fair trial or how he was prejudiced by his appellate counsel's failure to raise the issue. Therefore, this court is unable to say that the decision of the court of appeals was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Thus, this court must deny Whitehead's petition as to this ground.

Whitehead next alleges that his prior entries into the residence before he armed himself and confronted the occupants were other acts and thus should have been excluded. This court agrees with the court of appeals when it held that there was no merit to this argument. Although these

separate entries could have formed the basis for separate charges of burglary, as noted above, the government elected to forego these additional charges. Even if these earlier entries could be considered as other acts, they were closely related to the charged conduct. Thus, it was entirely appropriate for the prosecutor to refer to these actions and reasonable for Whitehead's appellate counsel to not raise these issue on appeal. Therefore, this court is unable to say that the decision of the court of appeals was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Thus, this court must deny Whitehead's petition as to this ground.

Finally, Whitehead alleges that his appellate counsel was ineffective for failing to allege that numerous incidents of prosecutorial misconduct occurred in the prosecutor's closing argument. Specifically, Whitehead claims the prosecutor engaged in misconduct when he referred to DNA, referred to Whitehead carrying away the Browns' property, and in a variety of other manners. The court of appeals denied these various claims on the basis that Whitehead had failed to demonstrate that he was prejudiced by his appellate counsel's decision not to raise any alleged prosecutorial misconduct on appeal. (Ans. Ex. M at 6.)

The court has reviewed the entire trial transcript, including the prosecutor's closing arguments, and has not identified any statement upon which an argument of prosecutorial misconduct could be reasonably based, and thus this court is unable to say that it was unreasonable for Whitehead's appellate counsel to not raise these issues on appeal. Additionally, as the court of appeals noted, Whitehead has failed to demonstrate that any allegedly unreasonable conduct resulted in prejudice. Therefore, this court is unable to say that the decision of the court of appeals was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding. Thus, this court must deny Whitehead's petition as to this ground.

**IT IS THEREFORE ORDERED** that Whitehead's petition for a writ of habeas corpus is denied. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of February 2008.

s/AARON E. GOODSTEIN<br>
U.S. Magistrate Judge